UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| AMANDA M. LABRIER, individually, and on behalf of all others similarly situated, | ) ) ) ) ) No. 2:15-cv-04093-NKL |
| Plaintiff, | ) ) |
| vs. | ) ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) |
| Defendant. | ) |

**ORDER**

Defendant State Farm Fire and Casualty Company moves to dismiss the first amended petition for failure to state a claim. [Doc. 21.] The motion is denied.

**I.   Background[1]**

Plaintiff Amanda LaBrier's house was damaged in a hail storm. The damage was a covered loss under LaBrier's State Farm insurance policy, and LaBrier made a claim under the section of the policy that provided for payment to be made prior to repair or replacement.

A State Farm adjuster gave LaBrier an estimate of the total cost of repair, including costs for materials, labor, and sales tax on the materials. After subtracting $2,009.79 for depreciation, and $1,421.00 for the deductible, State Farm paid LaBrier the net amount of $4,657.28. The dispute in this case involves State Farm's depreciation of certain labor costs. State Farm depreciated "mixed" costs, that is, costs representing both labor and materials, such as removing and replacing a gutter and downspout. [*Id.*, p. 18, ¶ 16.] State Farm did not depreciate "pure"

---

[1] The facts are taken from the First Amended Petition. [Doc. 1-1.] For purposes of ruling on the motion to dismiss, the allegations are accepted as true, and construed liberally, in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008).

labor costs, such as the labor cost of removing, hauling, and disposing of roof shingles. [Doc. 1-1, p. 18, ¶ 17.] LaBrier alleges State Farm breached its obligations under the policy when it depreciated mixed costs, because in doing so, it improperly depreciated the cost of labor.

The Declarations portion of the policy provides in part:

SECTION I – LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the Declarations apply. We will settle covered property losses according to the following.

COVERAGE A – DWELLING

1. Al – Replacement Cost Loss Settlement – Similar Construction

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I – COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

      (1) <u>until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property</u>;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed;

\* \* \*

[Doc. 21-1, p. 29, Policy, Form FP 7955, emphasis added.][2]

The policy contains no definitions of actual cash value or depreciation. The estimate form State Farm gave LaBrier referred to the "Net Actual Cash Value Payment ("ACV")" and defined "ACV" as "[t]he repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*." [Doc. 1-1, p. 18, ¶ 11, emphasis in original.] The form also included a definition of "depreciation": "[t]he decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits." [*Id.*, p. 18, ¶ 12.]

LaBrier seeks to represent a class of insureds whose payments were reduced by State Farm through depreciation of some costs of labor, for the period from March 30, 2005 to the date of trial. [*Id.*, p. 20, ¶ 26; p. 23, ¶ 38.]

## II. Discussion

### A. Count II, breach of contract

State Farm argues that LaBrier's breach of contract claim fails because it does not allege facts to show the "actual cash value" of LaBrier's insured loss. Effectively, State Farm contends that "actual cash value" means the fair market value of the property before and after the insured loss. Therefore, according to State Farm, LaBrier's complaint fails because it calculates "actual cash value" based on replacement cost minus depreciation, a calculation that may or may not reflect the fair market value of the property before and after the insured loss.

State Farm also seeks dismissal because LaBrier's complaint does not show whether LaBrier replaced the damaged property and received a replacement value payment. State Farm suggests that such a payment could fully compensate LaBrier because it would normally repay her

---

[2] The insurance policy was not attached to LaBrier's pleading, but is necessarily incorporated by the pleading, and so may be considered at the motion to dismiss stage. *Gorog v. Best Buy Co., Inc.,* 760 F.3d 787, 791-92 (8th Cir. 2014). State Farm filed the policy with its motion to dismiss.

any amount previously withheld for depreciation, regardless of whether the depreciation is based on materials or labor.

The interpretation of an insurance policy is a question of law to be determined by the Court. *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. Ct. App. 2015). Missouri courts read insurance contracts "as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written." *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. Ct. App. 2011). The language used in the policy will be afforded the meaning that would ordinarily be understood by the lay person who bought and paid for the policy. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210-11 (Mo. 1992) (en banc)

If an ambiguity exists, the policy language will be construed against the insurance company. *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. 1997) (en banc)*;* 30 MO. PRAC., INSURANCE LAW & PRACTICE § 1:22 (2d ed. 2014) (the most favorable construction to the insured must be adopted). There are at least two reasons for doing so. "First, insurance is designed to furnish protection to the insured, not defeat it." *Krombach*, 827 S.W.2d at 10-11 (citation omitted). "Second, as the drafter of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract." *Id.*

Ambiguity exists when the language is *reasonably* open to different constructions. *Cowin v. Shelter Mut. Ins. Co.,* 460 S.W. 3d 76, 79 (Mo. Ct. App. 2015); *Grable v. Atlantic Cs. Ins. Co.,* 280 S.W.3d 104, 107 (Mo. Ct. App. 2009). "If a conflict arises between a technical definition of a term and the meaning of the term which would reasonably be understood by the average lay person, the lay person's definition will be applied unless it is obvious the technical meaning was intended." *Corwin,* 460 S.W.3d at 79.

    **1.    Does Missouri have a common law definition of actual cash value?**

The LaBrier policy does not define actual cash value, nor does it provide a method for

calculating an actual cash value payment, but State Farm argues that Missouri law supplies the missing definition of actual cash value. For this proposition, State Farm relies primarily on *Wells v. Mo. Property Ins. Placement Facility,* 653 S.W.2d 207 (Mo. 1983) (en banc), and *Porter v. Shelter Mut. Ins. Co.,* 242 S.W.3d 385, 390 (Mo. Ct. App. 2008). State Farm suggests that those cases define actual cash value as the fair market value of the insured property before and after the loss. It further argues that Missouri law requires the insured to plead and prove actual cash value. [Doc. 22, p. 12, citing *Fire Ins. Exch. v. Bowers,* 994 S.W.2d 110, 112 (Mo. Ct. App. 1999)]. In contrast, LaBrier argues that actual cash value means replacement cost minus depreciation, which was the definition used by State Farm to calculate the actual cash value payment it made to LaBrier.

The Court concludes that Missouri law does not supply the definition of actual cash value as that term is used in the LaBrier policy. It is true that the Missouri Supreme Court in *Wells* held that for purposes of the insurance policy in dispute there, actual cash value meant the before and after fair market value of the insured loss. But in *Wells* the damage to the insured property was caused by fire and therefore involved an interpretation of Mo. Rev. Stat. § 379.140 and § 379.150, two statutes that deal with damage caused by fire. Specifically the Missouri Supreme Court stated:

> There is no express indication of how 'the damage done on the property' is to be calculated, but [Missouri] courts have long held that under that section [§ 379.140] and its predecessors[,] damages are to be measured by the difference between the reasonable values of the property immediately before and immediately after the casualty.

*Id.* at 210 (*citing Tinsley v. Aetna Ins. Co. v. Hartford, Conn.,* 205 S.W. 78, 81 (Mo. Ct. App. 1918)) (other citations omitted). Neither *Wells* nor any case cited by State Farm defines actual cash value except when the insured loss resulted from fire and Mo. Rev. Stat. § 379.140 or § 379.150 were found to be applicable. Those cases are not applicable here because LaBrier's insured loss resulted from hail, not fire.

Therefore, the only on point guidance the Court has is the Eighth Circuit Court of Appeals'

- 5 -

decision in *Cincinnati Ins. Co. v. Bluewood,* 560 F.3d 798 (8th Cir. 2009). In that case, the Eighth Circuit was squarely presented the question of whether § 379.150's definition of actual cash value controlled when a loss was caused by something other than fire. The insured suffered a partial loss due to water damage. The jury was instructed that actual cash value meant "the cost to replace the damaged property less a deduction that reflects depreciation, age, condition and obsolescence, if any." *Id.* at 802. The insured argued on appeal that the policy terms, which defined actual cash value as the replacement cost minus depreciation, should not have been enforced as written because § 379.150 set a different, controlling measure of damages, that is, the difference between the fair market value before and after the loss. The Eighth Circuit examined § 379.150 and *Wells,* and held that the Missouri Supreme Court would find § 379.150 applies only to losses caused by fire, because that interpretation harmonizes the components of the statute and gives meaning to all words of the text. *Compare Garvin v. Acuity,* 2012 WL 5197223, at 5 (W.D. Mo. Oct. 19, 2012) (claim under insurance policy for damage caused by wind; following the Eighth Circuit's reasoning in *Bluewood*, the district court held the Missouri Supreme Court would find §379.140 applies only to cases involving losses caused by fire).[3]

Because neither § 379.140 nor § 379.150 is applicable here, and because *Wells* and its progeny relied on those statutes to define actual cash value, the Court concludes there is no common law definition of actual cash value applicable to losses not cause by fire. Indeed, if such a common

---

[3] The Eighth Circuit in *Bluewood* noted that the parties had identified "four decisions in which the Missouri Court of Appeals mentioned that section 379.150 might extend to losses caused by risks other than fire." 560 F.3d at 804 (citing *Porter v. Shelter Mut. Ins. Co.,* 242 S.W.3d 385, 391 (Mo. Ct. App. 2007); *Herring v. Prudential Prop. & Cas. Ins. Co.,* 96 S.W.3d 893 (Mo. Ct. App. 2002); *Lopez v. Am. Family Mut. Ins. Co.,* 96 S.W.3d 891 (Mo. Ct. App. 2002); and *Cady v. Hartford Fire Ins. Co.,* 554 S.W.2d 499, 503 (Mo. Ct. App. 1977)). But the Eighth Circuit rejected Bluewood's argument that "these snippets of dicta suggest … section 379.150 *does* extend to losses caused by risk other than fire." *Id.* (emphasis in original). "The [Missouri Court of Appeals'] passing references to section 379.150 merely confirm that the statute's reach is an open question. The decisions on which Bluewood relies do not conclusively establish the position of the court of appeals on that issue, much less the position of the Missouri Supreme Court." *Id.*

law definition existed, there would be no reason to adopt § 379.140 and § 379.150 and limit them to only fire losses. In addition, one would expect that *Wells*, *Porter*, and *Bluewood* would have discussed actual cash value as a common law definition, rather than relying on the language of § 379.140 and § 379.150, if such a common law definition existed.

State Farm also cites *Hannan v. Auto-Owners Ins. Co.,* 2014 WL 3701031 (E.D. Mo. July 25, 2014), in support of its argument that Missouri common law defines actual cash value as the before and after market value. *Hannan* involved a homeowner's claim against an insurance company for breach of contract after the homeowner suffered storm damage. [Doc. 44, p. 6.] In the context of ruling on pretrial motions in limine, the district court examined the policy's provision for payment of actual cash value, a phrase not defined in the policy. The district court identified seemingly contradictory statements about how actual cash value could be defined under Missouri law, and then suggested that evidence of replacement cost would be admissible but may not be sufficient to show the actual cash value of the property at the time of the loss.

*Hannan* is not persuasive to the extent it contradicts the Eighth Circuit ruling in *Bluewood*. Moreover, while the district court in *Hannan* suggested that proof of replacement cost might be insufficient to prove actual cash value, it did not so rule. In fact it found that the insurance company had opted to pay replacement value to settle the claim and therefore evidence of replacement cost was admissible to show actual cash value even though the replacement cost payment had no deduction for any depreciation. How the issues were going to fit together was apparently reserved for another day until the details of the case were fleshed out.

2. **Ambiguity of "actual cash value"**

Having rejected State Farm's argument that Missouri law always defines actual cash value as the before and after fair market value of the insured loss, the Court finds that the term "actual cash value," absent a definition in the policy, is inherently ambiguous.

Policy language is ambiguous when there is indistinctness or uncertainty in the meaning of words used, or the language is reasonably open to different constructions. *E.g., Krombach*, 827 S.W.2d at 210-11. The meaning afforded the language used in the policy is that which would ordinarily be understood by the lay person who bought and paid for the policy. *Id*. Ambiguous language is construed against the insurer. *Gulf Ins.*, 936 S.W.2d at 814.

Several courts in other jurisdictions have concluded that the phrase "actual cash value," as used in similar insurance policies, is ambiguous when left undefined. In *Evanston Ins. Co. v. Cogswell Properties, LLC*, 2009 WL 198745, at *4 (W.D. Mich. Jan. 23, 2009), the district court explained that a "variety of methods are used to determine the value of real property, including market value, replacement cost, replacement cost minus depreciation, and stream of income. The meaning of actual cash value is ambiguous."

In *Adams v. Cameron Mut. Ins.,* 430 S.W.3d 675, 678-79 (Ark. 2013), the Supreme Court of Arkansas also held that "actual cash value" as used in an insurance policy was ambiguous. The parties agreed that some form of depreciation was allowed in computing actual cash value, but the policy did not provide definitions or a calculation methodology. Because the policy was fairly susceptible of more than one interpretation, the court held it was ambiguous. *Id.* [4]

---

[4] *See also Beard v. Allstate Indem. Co.*, 2011 WL 3330567, at *9 (E.D. Mich. Aug. 3, 2011) ("While it is clear that Plaintiff may recover the actual cash value of the property, the policy…is ambiguous as to how actual cash value is calculated."); *Holden v. Farmers Ins. Co. of Washington,* 239 P.3d 344, 349 (Wa. 2010) (policy in which actual cash value is undefined and does not specify what formula will be used to calculate it is ambiguous); *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1304 (11th Cir. 2008) (holding that the cost of overhead, profit, and taxes were included in actual cash value, because they were not unambiguously excluded); *Dickler v. CIGNA Property and Cas. Co.*, 957 F.3d 1088, 1098-99 (3rd Cir. 1992) (where policy did not define actual cash value or depreciation, policy was ambiguous and would be construed in favor of insured to define depreciation as physical deterioration); and Harold H. Reader III, MODERN DAY ACTUAL CASH VALUE: IS IT WHAT THE INSURERS' INTENDED?, 22 Tort & Ins. L. J. 282, 283 (Winter 1987) (acknowledging the "disputes (among both commentators and the courts) as to the meaning of the term actual cash value": fair market value, replacement cost minus depreciation, or as calculated under the so-called broad evidence rule).

Because the LaBrier policy does not define actual cash value, it is ambiguous and therefore must be construed in favor of the insured. The LaBrier's interpretation of actual cash value as repair or replacement cost minus depreciation is one of a variety of reasonable definitions used in the context of partial lost. Therefore, the Court finds actual cash value means replacement cost minus depreciation.[5] *E.g., Grable,* 280 S.W.3d at 107 (insurance policy terms are ambiguous if they are reasonably open to different reasonable constructions).

Furthermore, the parties' course of conduct is consistent with the Court's interpretation. "It is a well-established rule of law that the construction placed upon a contract by the parties as evidenced by acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts where the language of the contract is ambiguous, or there is a reasonable doubt as to its meaning[.]" *State ex rel. Nw. Mut. Life Ins. Co. v. Bland*, 189 S.W.2d 542, 549 (Mo. 1945) (en banc). *See also Aetna Cas. & Sur. Co. v. Haas,* 422 S.W.2d 316, 320 (Mo. 1968) (where an insurance company "placed a practical construction of coverage under the policy by paying a like property damage loss under a prior identical policy[,]" such "construction was against its interest and will be given great weight in ascertaining the intention of the parties to the contract").

Here, a State Farm adjuster estimated a total cost of $8,088.07 for repair of damage to LaBrier's home, including costs for materials, labor, and sales tax on the materials. State Farm gave LaBrier an estimate form that expressly referred to the "Net Actual Cash Value Payment" and defined actual cash value as "[t]he repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*." [Doc. 1-1, p. 18, ¶ 11, emphasis in original.] State Farm used that definition in calculating the actual cash value payment it made. LaBrier agrees

---

[5] There is no dispute that a deductible is also to be subtracted from the actual cash value payment.

- 9 -

Case 2:15-cv-04093-NKL   Document 67   Filed 11/30/15   Page 9 of 20

that this is the proper definition of actual cash value and disagrees only with what is properly depreciated. This conduct of the parties is some evidence of what they intended when they formed the contract

In summary, the Court finds that actual cash value for purposes of LaBrier's insured loss means replacement cost minus depreciation.

### 3. Has LaBrier adequately pleaded injury?

State Farm also argues LaBrier failed to allege sufficient facts to demonstrate injury. Its argument rests in part upon State Farm's position that *Wells* establishes the measure of damages, which the Court has rejected. But State Farm argues that even under LaBrier's interpretation of actual cash value, she fails to allege whether she repaired or replaced the property, whether she received any additional payment from State Farm as a result of any repair or replacement of the property, and whether that payment exceeded the actual cash value payment she did receive. Effectively State Farm is arguing that LaBrier's actual cash value calculation could exceed the replacement cost and therefore is in excess of what she is entitled to receive under the terms of the policy.[6] Alternatively, if LaBrier replaced the damaged property and received a second payment from State Farm which reimburses the previously withheld depreciation, LaBrier has not been damaged, regardless of how State Farm calculated the actual cash value payment.

The provision of the policy limiting State Farm's liability to actual repair or replacement costs is a subordinate provision of the policy, inserted for the benefit of State Farm. Such a provision must be pleaded by the insurer, as an affirmative defense, if the provision "would diminish or limit the amount of recovery[.]" *Mechanics' Ins. Co. of Philadelphia v. C.A. Hoover Distilling Co.,* 182 F.590, 596-97 (8th Cir. 1910). *See also Home Ins. Co. of New York v.*

---

[6] For purposes of an actual cash value payment, LaBrier is only entitled to receive the actual cash value of her loss, or the actual cost to repair or replace the damaged property, whichever is less.

*Sullivan Machinery Co.,* 64 F.2d 765, 768 (10th Cir. 1933) ("The claim under … a subordinate provision that the replacement value was less than the actual cash value is an affirmative defense. It was incumbent upon the [insurer] to plead and prove such defense if it desired to rely thereon."); Steven Plitt, Daniel Maldonado, Joshua Rogers, and Jordan Plitt, 17 COUCH ON INSURANCE THIRD EDITION § 245:97, Limitation of Liability. Accordingly, it is State Farm's burden to plead, as an affirmative defense, that LaBrier's actual cash value calculation exceeded the cost of repair or replacement.

Further, payment for a liability is generally an affirmative defense. Fed. R. Civ. Pro. 8(c)(1). While LaBrier clearly has the burden to prove that State Farm made an actual cash value payment that caused her a loss, it is likely that State Farm has the burden to plead it paid LaBrier for the labor it previously depreciated and therefore extinguished any liability it had.

The LaBrier complaint pleads how much she received for actual cash value, that the actual cash value was improperly calculated, how it was improperly calculated, and that she suffered a loss as a result. This is sufficient under notice pleading standards, as interpreted in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007), to state a plausible claim for breach of contract.

### 4.  Can labor be depreciated?

State Farm contends that even if actual cash value is calculated as replacement cost minus depreciation, LaBrier's claim fails on the merits because labor is properly depreciated for purposes of that calculation. State Farm argues that under Missouri law and by the terms of the LaBrier policy, she was not entitled to replacement value until the damaged property was replaced or repaired. State Farm further argues that to permit LaBrier to recover undepreciated labor would violate basic principles of indemnity by permitting her to get replacement value for the labor even though she never replaced the roof. State Farm relies in part on *Dollard v.*

- 11 -

Case 2:15-cv-04093-NKL   Document 67   Filed 11/30/15   Page 11 of 20

*Depositors Ins. Co.,* 96 S.W. 3d 885 (Mo. Ct. App. 2002), in which the court held "[t]he insured bears the share of the loss resulting from the deterioration, obsolescence and similar depreciation of the property's value at the time of the loss. Replacement cost insurance covers this shortfall." *Id*. at 889.[7] State Farm also relies on a series of out-of-state cases that have held that labor can be depreciated, including an oft-cited case, *Redcorn v. State Farm Fire & Cas. Co.,* 55 P.3d 1017 (Okla. 2002). In *Redcorn,* the Oklahoma Supreme Court concluded that an insurer properly depreciated labor when calculating actual cash value. It said:

> [Plaintiff] insured a roof surface, not two components, material and labor. He did not pay for a hybrid policy of actual cash value for roofing materials and replacement costs for labor. To construe the policy in such a manner would unjustly enrich the policy holder.

*Id.* at 1021.

LaBrier cites to out-of-state cases that hold that labor should not be depreciated even when the insured has a replacement policy and has not yet replaced the roof. In *Adams v. Cameron Mut. Ins.,* 430 S.W.3d 675, 678-79 (Ark. 2013), the Supreme Court of Arkansas held that "actual cash value" as used in the disputed insurance policy was ambiguous. The parties agreed that some form of depreciation was allowed in computing actual cash value, but the policy did not provide definitions or a calculation methodology. Because the policy was fairly susceptible of more than one interpretation, the court held it was ambiguous. *Id.* The Arkansas court rejected the insurance company's argument that labor was depreciable, explaining, "'[D]epreciation' plainly means '[a] decline in an asset's value because of use, wear, obsolescence or age' and these factors do not apply to labor." *Id.* at 678 (internal citation

---

[7] This language is similar to the language contained in the policy at issue in *Riggins v. Am. Fam. Ins. Co.,* no. 14:-cv-04171-SRB (W.D. Mo.). In that case, the district court found that the policy language, which referred to property of like kind and quality less depreciation for physical deterioration and obsolescence, was evidence that there was no depreciation for labor because the focus was on physical depreciation.

- 12 -

omitted). The court found no merit in the insurer's argument that paying the full labor costs associated with the insureds' losses would put the insureds in a better position than they were prior to the loss. *Id.* at 677.

In *Bailey v. State Farm Fire and Cas. Co.,* 2015WL 1401640, *5-8 (E.D. Ky. 2015), the insurer and insured agreed that under Kentucky law, actual cash value meant replacement cost of the property at the time of loss, less depreciation. But depreciation was not defined in the policy, and the parties disagreed whether labor was depreciable. The district court observed Kentucky has long recognized that the purpose of insurance is to indemnify the insured, that is, to put the insured back in the position he or she enjoyed prior to the loss. The court further observed that an insurance policy is to be construed strictly against the insurer; ambiguity is resolved in favor of the insured. After examining the Supreme Court of Arkansas' decision in *Adams* (holding labor was not depreciable), and the Supreme Court of Oklahoma's decision in *Redcorn v. State Farm Fire & Cas. Co.,* 55 P.3d 1017 (Okla. 2002) (holding labor was depreciable), as well as Justice Boudrou's dissenting opinion in *Redcorn, id.* at 1022, the district court in *Bailey* concluded labor was not depreciable: "To adequately indemnify its insureds, [the insurer] should pay the cost of materials, depreciated for wear and tear, plus the cost of their installation. … [T]his conclusion is consistent with Kentucky law … and general principles of indemnity." 2015WL 1401640, at *8.

In a separate dissent filed in *Redcorn,* Justice Summers observed, "Before the damage the insured had on his house a roof with sixteen-year-old shingles. After the damage the insured is contractually entitled to have on his house sixteen-year-old shingles, or their value in money. He should not bear any of the cost of installing them, because that would deprive him of that for which he contracted—being made whole as if the damage had not occurred." 55 P.3d at 1023.

- 13 -

The word depreciation has various meanings, some of which focus on material condition. *See Hoover v. Pa. Electrical Contractor,* 600 S.W.2d 504, 514 (Mo. Ct. App. 1980), and *State ex. Rel. Pettis Co. R. XII Sch. Dist. V. Kahrs,* 258 S.W.3d 85 (Mo. Ct. App. 2008). When expressly presented with the question of depreciation of labor in the insurance context, the courts in *Adams* and *Bailey* held that it is not subject to depreciation, in view of the purpose of insurance. The courts in *Redcorn, Graves v. American Fam. Mut. Ins. Co.,* 2015 WL 4478468, at *4 (D. Kan. July 22, 2015), and *Papurello v. State Farm Fire & Cas. Co.,* 2015 WL 7177235, *20-21 (W.D. Penn. Nov. 16, 2015), held that labor could be depreciated. However, even the District Court of Kansas, whose opinion State Farm cites in support of its interpretation, describes the depreciation of labor as an "uncomfortably abstract notion." *Graves v. American Fam. Mut. Ins. Co.,* 2015 WL 4478468, at *4 (D. Kan. July 22, 2015). That the term is open to different interpretations by the courts demonstrates its ambiguity. Because the terms actual cash value and depreciation in this context are ambiguous, the Court must resolve the dispute in favor of the insured unless LaBrier's interpretation is not reasonable. Ambiguities are resolved in favor of the insured because "insurance is designed to furnish protection to the insured, not defeat it." *Krombach*, 827 S.W.2d at 10-11. And "as the drafter of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract." *Id.*

State Farm argues that LaBrier's interpretation is unreasonable because it gives her replacement value for the labor component of the roof even though she has not replaced it. It also contends that including undepreciated labor costs in an actual cash value payment, would permit the insured to get thousands of dollars in current labor costs for a roof with a 30-year life that was already 30 years old at the time of the casualty. This would result in a windfall for the insured, according to State Farm.

State Farm's policy says it will pay claims as follows:

SECTION I – LOSS SETTLEMENT

>   Only the Loss Settlement provisions shown in the Declarations apply.  We will settle covered property losses according to the following.
>
>   COVERAGE  A – DWELLING
>
>   1.  A1 – Replacement Cost Loss Settlement – Similar Construction
>
>       a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I – COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:
>
>           (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
>           (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less; ….

[Doc. 21-1, p. 2.]

State Farm's policy does not define actual cash value; it merely says actual cash value won't exceed the policy's limit of liability or the cost to repair or replace the property.  Would an ordinary lay person reading this language reasonably understand that both labor and materials would be depreciated to calculate actual cash value?  It does say that after repairs are made, any "covered additional" amounts necessarily spent will then be paid up to the policy limits.  But would a lay person know that "covered additional" amounts necessarily spent refers to both labor and materials?  It would be reasonable to assume that whatever was deducted at the first step would be repaid at the second step, but this doesn't tell the ordinary lay person what is being

deducted at the first step.  Would the ordinary lay person think she was going to get paid the cost of labor twice?  That would be unreasonable.  But an ordinary lay person could reasonably expect that any actual cash value payment would be in an amount that would put her back where she was before the casualty—not better off, but at least as well off.  Then, once she made repairs, she would get "additional" covered amounts necessarily incurred—not expenses already covered by the actual cash value payment, but the "additional" expenses incurred.

As for State Farm's hypothetical of the 30-year-old roof,  the Court agrees that it seems to make no economic sense to pay labor for a roof that has outlived its life expectancy.  But it still gives the insured what she had, which is what indemnity is minimally for.  And this calculation is for partial losses, not for total losses, which the hypothetical appears to be based on.  Should the losses be as extensive as suggested by State Farm's calculation, it is unlikely any homeowner would not repair a roof totally damaged by hail or wind.  In addition, if labor is depreciated and the materials are depreciated (apparently to zero if the value of the roof is fully exhausted as the hypothetical suggests), then the insured is left with no value for a roof that had previously sheltered the occupants—old as it was.

While the Court might find the interpretation suggested by State Farm more reasonable, it cannot say that LaBrier's interpretation is unreasonable, given the prism through which the language is to be evaluated.  Finally, and of significant importance, State Farm controlled the language of the policy; LaBrier did not.

There are a variety of ways to calculate the present value of a roof and all necessarily rely on approximation.  The value of the old shingles, plus the cost of installing them—the method LaBrier urges—is one approximation. The present-day cost of replacing the roof, minus deprecation for labor and materials—the method State Farm used in calculating actual cash

- 16 -

Case 2:15-cv-04093-NKL   Document 67   Filed 11/30/15   Page 16 of 20

value—is another.  Still another way is fair market value.  And whatever method is used, all are designed to calculate what represents the insured's pre-loss position as the owner of an old roof.

In view of the foregoing, State Farm's motion to dismiss Count II is denied.

**B.     Count I, Declaratory judgment**

In Count I, LaBrier requests a declaration that State Farm's depreciation of labor costs is contrary to the insurance policy it issued, and asks for damages in the amount of depreciated labor costs plus interest.  [Doc. 1-1, p. 22.]

The availability of declaratory relief is a matter of federal law, governed by the Declaratory Judgment Act.  *See G.S. Robins & Co. v. Alexander Chem. Corp.*, 2011 WL 1431324, at *1 n.l (E.D. Mo. Apr. 14, 2011).  The Declaratory Judgment Act provides that in a "case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  As its language suggests, the Act "granted the federal courts discretion to make a declaration of rights; it did not impose a duty to do so."  *Alsager v. District Ct. of Polk Cnty., Iowa*, 518 F.2d 1160, 1163 (8th Cir. 1975) (internal quotation and citation omitted).  Therefore, a district court should deny declaratory relief unless  (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and (2) "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings."  *Id.* (internal quotation and citation omitted).

Declaratory relief does not serve a useful purpose where "the declaratory judgment plaintiff has another, more appropriate remedy."  *Glover v. State Farm Fire & Cas. Co.*, 984 F.2d 259, 261 (8th Cir. 1993).  "It is well-established that a party is entitled to equitable relief only if there is no adequate remedy at law."  *Id.* (citing *Morales v. Trans World Airlines, Inc.*,

- 17 -

504 U.S. 374, 381 (1992)); *see also Midwest Special Surgery, P.C. v. Anthem Ins. Companies*, 2010 WL 716105, at *6 (E.D. Mo. Feb. 24, 2010) (and cases cited therein).

In her declaratory relief count, LaBrier alleges breach of obligations under the terms of the insurance contract and asks for a declaration that the terms have been breached, as well as damages for the breach. The declaratory relief count essentially duplicates the breach of contract count, in which LaBrier alleges State Farm breached the contract in the same way and requests damages for the alleged breach.

However, LaBrier also seeks class certification and the Court cannot say at this stage of the litigation whether there will be class certification or if there is, whether a declaratory judgment would serve a useful purpose. Therefore, the Court denies State Farm's motion as to Count I, without prejudice.

### C. Request for attorney fees and prejudgment interest

Finally, State Farm seeks dismissal of LaBrier's request for attorney fees and pre-judgment interest under Rule 23 and Mo. Rev. Stat. § 408.020, respectively.[8] At this stage in the proceedings and because the Court will not dismiss Counts I and II, the request to dismiss the fee request under Rule 23 is premature and is denied.

As for LaBrier's request for prejudgment interest, § 408.020 provides in relevant part:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made….

The statute applies to insurance contracts. *Ins. Co. of N.A. v. Skyway Aviation, Inc.,* 828 S.W.2d 888, 892 (Mo. Ct. App. 1992). But prejudgment interest may only be awarded where the

---
[8] The Complaint did not cite the provisions under which LaBrier sought fees and prejudgment interest, but LaBrier clarified in her suggestions in opposition that she sought them under the above-cited rule and statute. [Doc. 28, p. 19.]

- 18 -

claim is liquidated. *Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613, 624 (Mo. Ct. App. 2001) (citation omitted). "To be liquidated, the claim must be fixed and determined or readily ascertainable by computation or a recognized standard." *Id.* (internal quotation and citation omitted). Interest is allowed from the time of demand, or if no demand is made, from the date a lawsuit is filed. *Midwest Division-OPRMC, LLC v. Dep't of Soc. Svs., Div. of Medical Svs.,* 241 S.W.3d 371, 384 (Mo. Ct. App. 2007). "Although the demand need be in no certain form, it must be definite as to amount and time." *Monsanto Co. v. Gould Electronics, Inc.*, 965 S.W.2d 314, 318 (Mo. Ct. App. 1998).

In *Midwest Division-OPRMC*, the Missouri Court of Appeals held the plaintiff hospitals were entitled to prejudgment interest. Their damages were simply calculated under the challenged regulations establishing their per diem reimbursement rate. The court concluded that the hospitals' damages were "readily ascertainable by computation or a recognized standard," and thus were liquidated. *Id.* The hospitals were therefore entitled to prejudgment interest.

Likewise here, the plaintiff's damages are readily ascertainable by computation or a recognized standard. LaBrier pleads State Farm reduced her actual cash value payment by depreciating the labor component of mixed-cost items, an amount State Farm calculated itself using its "Xactware/Xactimate's estimating software." [Doc. 1-1, p. 19, ¶ 19.] LaBrier pleads when her loss occurred, and that she seeks to represent a class who suffered the same losses for the period March 30, 2005 through the date of trial. Accordingly, the claim is liquidated, and is definite as to amount and time. State Farm's request to dismiss the claim for pre-judgment interest is denied.

## III. Conclusion

Defendant State Farm Fire and Casualty Company's motion to dismiss [Doc. 21] is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  November 30, 2015
Jefferson City, Missouri