UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| AMANDA M. LABRIER, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) No. 2:15-cv-04093-NKL ) ) |
| vs. | ) ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) |
| Defendant. | ) ) |

**ORDER**

On April 6, 2016, Special Master Leland Shurin[1] ordered Defendant State Farm Fire and Casualty Company to answer Plaintiff Amanda LaBrier's second set of interrogatories by 5/6/2016. [Docs. 117 and 125.] On April 14, 2016, State Farm objected to the Special Master's order, arguing the interrogatories are unduly burdensome and the order penalizes State Farm for its record keeping. State Farm asks the Court to vacate or suspend the order. [Doc. 135.]

For the reasons discussed below, the Court concludes the Special Master did not abuse his discretion in entering the order. State Farm's motion is therefore denied.

**I.      Background**

In May 2015, State Farm removed this case from state court, filing the supporting declaration of its employee Juan Guevara, in which he explained he used State Farm's and Xactware Solutions, Inc.'s data to generate calculations of class size and alleged damages.

Since July 2015, LaBrier has been serving State Farm with discovery concerning State

---

[1] Mr. Shurin was agreed to by the parties and appointed in February 2016.

Farm's data related to putative class members and damages.[2] In October 2015, as a means to streamline discovery, LaBrier proposed that State Farm provide a list of data fields that were available in State Farm's and Xactware's databases, including a list of fields for State Farm's internal claims payment data. State Farm would not do so. LaBrier then deposed Naresh Jangda, a State Farm software engineer who writes computer code to retrieve data from State Farm's internal claim system and who has done so to retrieve class-wide data in other labor depreciation class actions. Jangda testified that State Farm maintained a list of data fields and that he could put almost any such data field into an Excel spreadsheet. LaBrier also deposed Jamie Stoddart, an Xactware developer who writes code to retrieve data from Xactware databases. Similar to Jangda, Stoddart testified he has done so to retrieve class-wide data on behalf of State Farm in other labor depreciation class actions, that Xactware maintained a list of data fields, and that he could put almost any such data field into an Excel spreadsheet.

In March 2016, LaBrier told the Special Master that she sought a list of all data fields for both systems, and wanted to obtain remote access to State Farm's electronic claims system. State Farm objected, arguing that the identity of data fields and operation of its complex proprietary electronic claim system were highly confidential and constituted trade secrets, and doing so would not yield the information LaBrier sought. The Special Master preliminarily ruled that in lieu of providing data fields or remote access, State Farm should answer interrogatories asking for labor depreciation withheld and the dates relevant to calculation of prejudgment interest, and State Farm's affirmative defenses.

---

[2] LaBrier served her first requests for production in July 2015; first set of interrogatories in October 2015; second requests for production, a notice of deposition of State Farm's employee, and a subpoena duces tecum on Xactware Solutions, Inc.'s employee in December 2015; a notice of deposition on Xactware's employee in January 2016; five notices of deposition in February and March 2016; and a second set of interrogatories in March 2016.

In total, the Special master held six in-person and telephone hearings from 3/4/2016 to 4/1/2016 before issuing Order No. 4, and reviewed extensive written argument, and numerous depositions and other evidence submitted by the parties. The Special Master concluded the interrogatories sought information that is within the scope of Rule 26, in that they sought information relevant to the case, and were proportional to the needs of the case, considering the factors expressly provided under Rule 26(b). He noted that State Farm's primary issue concerned whether the burden or expense of the proposed discovery outweighs its likely benefit. He observed that the authorized scope of discovery in this case concerns both merits and certifiability, so LaBrier was entitled to conduct discovery on both. He concluded that State Farm had identified a universe of 150,000 Missouri claims at issue, and State Farm's

> own briefing confirms that the computerized information available to it for each of the…claims as to which the Interrogatories could potentially seek information[] includes the following:
>
> (a) The incremental amounts paid on the claim;
> (b) The total amounts paid on the claim;
> (c) The amount of the relevant deductible;
> (d) The amount of the relevant policy limits, under Coverage A;
> (e) The amount of the calculated "Actual Cash Value"; and
> (f) The amount of labor depreciation deducted, in the course of calculating "Actual Cash Value."

[Doc. 117, pp. 2-3.] Furthermore, the Special Master concluded, it appeared that the amounts of withheld depreciation called for in the interrogatories could be determined from State Farm's computerized records with respect to at least a subset of the 150,000 claims: "(a) the total claims payments made were equal to the calculated "Actual Cash Value" amount (less the relevant deductible), and (b) these total payments were still less than the total maximum amount that might be payable (in light of the relevant policy limits), if the claim was resolved on the basis of actual repair or replacement cost." [*Id.*, p. 3.] "Consequently," the Special

- 3 -

Master concluded, "it would appear that individualized claim-file review would not be required in order to" answer the interrogatories, "at least with respect to a significant portion of" the claims. [*Id*.]

The Special Master concluded that even if the above rationale was incorrect, State Farm should be required to answer the interrogatories for additional reasons. State Farm was being ordered to answer interrogatories in lieu of producing documents, which State Farm had described as a substantial burden. To the extent State Farm's computerized data was not readily accessible, it is because of State Farm's purported inability to access the data, notwithstanding that State Farm itself uses the same categories of information pertinent to the calculation of amounts owed its insureds. "At the very least, [State Farm's] failure to keep such records should not constitute justification to withhold relevant discovery from [LaBrier]." [*Id.* at p. 4.]

The Special Master set out the approved interrogatories in the Order. State Farm was ordered to answer the following interrogatories by May 6, 2016:

> **INTERROGATORY NO. 1:** Separately for each structural damage claim upon which you made one or more actual cash value ("ACV") payments to Missouri policyholders, and for which some amount of depreciation of labor was withheld from at least one of those ACV payments, please state the total, principal amount of labor depreciation that was actually withheld by you for each claim, subject to the applicable deductibles and policy limits. The criteria for this interrogatory are as follows:
>
> > a. The temporal scope of this interrogatory includes claims for which the first ACV payment was between March 30, 2005 and the present and
> > b. Excluded from this interrogatory is any structural damage claim that is or was subject to appraisal and
> > c. Excluded from this interrogatory is any structural damage claim that is or was the subject of an individual lawsuit and
> > d. By the terms of this interrogatory, excluded from this interrogatory is any claim for which State Farm paid its full limits of available coverage, without regard to the withholding of labor depreciation.

- 4 -

**INTERROGATORY NO. 2:** Separately state, for each structural damage claim within the scope of Interrogatory No. 1 (including its criteria) and for which you withheld labor depreciation of any amount from a Missouri policyholder, state the date that labor depreciation was first withheld. If multiple labor depreciation withholdings took place for a particular claim, state both the date(s) and amount(s) of the withheld labor depreciation.

**INTERROGATORY NO. 3:** Separately state, for each structural damage claim within the scope of Interrogatory No. 1 (including its criteria) and for which you withheld labor depreciation of any amount from a Missouri policyholder, whether you contend you subsequently paid a portion or all of the withheld labor depreciation for such claim, and, if so, set forth the date and amount of the withheld labor depreciation that was later paid. If you contend that payment of withheld labor depreciation took place on multiple dates for a particular claim, state both the date(s) and amount(s) of payment(s) of the withheld labor depreciation.

**INTERROGATORY NO. 4:** Separately state, for each structural damage claim within the scope of Interrogatory No. 1 (including its criteria) and for which you withheld labor depreciation of any amount from a Missouri policyholder, which of your affirmative defenses apply to such claim and the facts supporting your affirmative defense(s) for such claim.

[Doc. 125, pp. 3-4.]

**II. Discussion**

Focusing on the burden of compliance, State Farm argues that the discovery is not proportional to the needs of the case.

**A.    Standard for review of the Special Master's order**

Because the Order appointing the Special Master in this case was silent as to the standard of review, his discovery orders are reviewed by this Court for abuse of discretion. *See* Fed. R. Civ. P. 3(f)(5) (a "court may set aside a master's ruling on a procedural matter only for an abuse of discretion" unless the order of appointment "establishes a different standard"); and, *see, e.g., In re. Hardieplank Fiber Cement Siding Litig.,* 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (special master's discovery orders are procedural and subject to review for abuse of discretion).

State Farm argues the standard is *de novo*, but the cases it cites are unpersuasive. They involve review of orders concerning disputes referred to special masters for report and recommendation. *E.g., Koninklijke Philips Electronics N.V. v. Zoll Lifecor Corp.,* 2014 WL 4660539 (W.D. Pa. Sept. 17, 2014) (motion to compel referred to special master for report and recommendation, which court adopted in part). Here, the Special Master is authorized to make discovery orders. State Farm also suggests that LaBrier's cited authority, *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.,* 2007 WL 878566, *1 (N.D. Cal. Mar. 20, 2007), establishes a more rigorous review standard when discovery disputes are not "standard" ones. The court in *Advanced* simply observed that the dispute before it was a standard discovery dispute, and not functionally similar to a dispositive order, and proceeded to apply the abuse of discretion standard in reviewing the special master's discovery order. The Special Master's order here is not the functional equivalent of a dispositive order.

Accordingly, the abuse of discretion standard will be applied here.

**B.     Does the burden or expense of the proposed discovery outweigh its likely benefit?**

The federal rules contemplate liberal discovery. Rule 26(b)(1) authorizes parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Under the rules, district courts possess considerable discretion in determining the need for, and form of, discovery. *See Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 898–99 (8th Cir. 1978). District courts are similarly granted considerable discretion in

determining the necessity for and scope of discovery on issues related to class certification. *See Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1495 (5th Cir.1993); *Kamm v. California City Dev. Co.,* 509 F.2d 205, 209 (9th Cir. 1975). The Eighth Circuit Court of Appeals has generally endorsed broad discovery prior to class certification. *See Johnson v. Nekoosa–Edwards Paper Co.,* 558 F.2d 841, 845 n. 5 (8th Cir. 1977) ("[W]e note that broad discovery should usually be permitted prior to class certification."). Because the rules "allow for broad discovery, the burden is typically on the party resisting discovery to explain why discovery should be limited." *Cincinnati Ins. Co. v. Fine Home Managers,* 2010 WL 2990118, *1 (E.D. Mo. July 27, 2010) (*citing Rubin v. Islamic Republic of Iran,* 349 F.Supp.2d 1108, 1111 (N.D.Ill.2004)). The bare assertion that requested discovery is unduly burdensome is "ordinarily insufficient to bar production." *Id.* (*citing St. Paid Reinsurance Co., Ltd. v. Commercial Fin. Corp.,* 198 F.R.D. 508, 511–12 (N.D. Iowa 2000)). In *Cincinnati*, for example, the court was "not persuaded" that the amount of time or money required to comply with discovery represented an undue burden, where the objecting party failed to provide an estimate of hours or monetary cost of compliance. *Id.* at *2.

In this case, Special Master Shurin effectively ordered State Farm to identify the amount of labor depreciation withheld and the dates when it was withheld. For each claim, State Farm was to state whether some or all of the depreciation was later paid by State Farm. Excluded from the calculations were any claims for which State Farm paid its full limit of coverage. Finally, State Farm was to identify which affirmative defenses it was asserting as to each claim where labor was depreciated. State Farm does not dispute that the discovery sought is relevant. Indeed, the discovery goes directly to central issues in the case and is needed to identify class members and damages, discovery that is routinely provided in class action cases.

- 7 -

Case 2:15-cv-04093-NKL   Document 176   Filed 05/09/16   Page 7 of 13

State Farm argues, however, that it cannot answer the interrogatories without complex inquiries in multiple databases. For example, it claims it cannot search for "actual cash value" payments using data inquiries because its payment data is in a "picture format" which can only be accessed through "ECS." In addition, it claims calculating labor depreciation for any particular claim based on Xactware estimates would require downloading estimates "one at a time and recalculating each estimate manually." Yet Guevara explained that he used Xactware software at the beginning of the lawsuit to identify the number of putative class members, which necessarily required identification of who had depreciated labor deducted from their ACV calculation. He also used the data to estimate the amount of damages being alleged. While the Court understands the actual payment data is in the ECS system, it finds incredible the suggestion that there is no cost-effective way to match up information in one database with the information in another. Even if this data sorting would need to be done for each claim, data sorting is what computers do in much higher levels in very short amounts of time. Therefore, even if the matching must be done claim by claim, the time and cost involved does not justify preventing LaBrier's access to critical information.[3]

The Court recognizes this might require computer programming that State Farm does not have or does not normally use for this purpose. Nonetheless, State Farm has refused access to its computer system. Therefore, neither the Court nor LaBrier can determine whether such a calculation can be made with existing software. In light of State Farm's interest in keeping its computer system secret, it should bear the cost of doing any additional programming to pull out the information required by the interrogatories, which is information clearly within the control of

---

[3] Even if Guevara testified that Xactware estimates had to be downloaded one at a time, and individually calculated, such testimony does not address how Guevara was able to provide information in support of State Farm's removal of the case to federal court within 30 days of its filing, nor what information is available in State Farm's own claims payment system.

- 8 -

State Farm.

While it may be more difficult to determine when a later payment effectively reimburses a previously withheld labor depreciation, State Farm has not identified with any specificity why the databases it has access to would not show subsequent payments being made to an insured for replacement cost. While theoretically such subsequent payments could be for something else, the Court agrees with the Special Master that this will be the exception and not the rule. Indeed, Guevara could identify putative class members by claim and could calculate estimated damages within 30 days for each putative class member. State Farm has not identified with specificity and coherence why it cannot now, after many months of discovery, use a similar method to provide highly relevant discovery contemplated by the Federal Rules of Civil Procedure.

Further, retroactive reimbursement of labor depreciation is arguably an affirmative defense that State Farm would need to gather information on anyway, which is further reason for State Farm being required to incur this expense. *Asberry v. Cate*, No. 11-2462, 2014 WL 1286191, at \*3 (E.D. Cal. Mar. 31, 2014) ("Moreover, if the responding party would necessarily have to gather the requested information to prepare its own case, objections that it is too difficult to obtain the information for the requesting party are no honored."); *Flour Mills of Am., Inc. v. Pace*, 75 F.R.D. 676, 680-81 (E.D. Okla. 1977) ("An interrogatory will not be held objectionable as calling for research ... if the interrogated party would gather the information in preparation of its own case."); *Am. Oil Co. v. Penn. Petrol. Prods. Co.*, 23 F.R.D. 680, 683 (D.R.I. 1959) ("Since the information sought here will undoubtedly be assembled by the defendant prior to trial in preparation for its defenses, it cannot be said that these interrogatories are objectionable as being burdensome.").

Indeed, this is true as to all State Farm's affirmative defenses and placing the burden on

State Farm to provide information in support of its affirmative defenses ensures State Farm will be judicious in identifying those affirmative defenses that are sufficiently viable to justify the cost of discovery. For example, State Farm suggests it might need to do an in-person viewing of the property in question, before it can answer the interrogatories. The Court thinks such discovery is highly implausible, so shifting the cost to State Farm is not unfair. As for the bulk of the information requested, however, State Farm did not provide evidence from its own or Xactware employees knowledgeable about the databases, describing and estimating the hours and costs of obtaining class-wide data reports needed to respond to the interrogatories, and detailing the manner in which they would be required to analyze the data.

State Farm's reliance on an extrapolation of hours and costs based on materials filed in another case does not convince the Court that the Special Master abused his discretion. Those materials were not prepared by State Farm employees, or persons who work in the insurance industry, who have general technology expertise, or who have expertise in working with State Farm or Xactware databases. In contrast, the testimony of State Farm employee Jangda and Xactware employee Stoddart, to which LaBrier points, demonstrated their familiarity with the systems, and experience in retrieving the data on behalf of State Farm in other labor depreciation class actions. Neither Jangda nor Stoddart described a burdensome process, let alone an unduly burdensome one. As previously mentioned, State Farm's own employee, Guevara, was able to quickly access at least part of the data when State Farm wished to use it.

Again, State Farm was ordered to answer interrogatories, rather than produce documents or permit LaBrier to search for the information, after State Farm argued that producing data fields and providing proprietary system access would divulge highly confidential, trade secret information. Answering interrogatories has ameliorated State Farm's concern about keeping its

- 10 -

Case 2:15-cv-04093-NKL   Document 176   Filed 05/09/16   Page 10 of 13

system confidential. A litigant cannot keep its own system secret and then refuse to gather the information itself.

Moreover, it is plain from the procedural development of this case and the course of proceedings before the Special Master, that State Farm was focused on providing discovery in the manner it saw fit, whether phased, sampled, or delayed, which the Court has never permitted in the year since State Farm removed this case from state court. *See Admiral Theatre,* 585 F.2d at 898–99 (district courts possess considerable discretion in determining the need for, and form of, discovery); *Buycks-Roberson v. Citibank Fed. Sav. Bank,* 162 F.R.D. 338, 343 (N.D. Ill. 1995) (declining to limit class discovery to a sample selected by the defendant, noting that "[t]he Federal rules and this Court do not countenance self-selecting discovery by either party"). During the course of discovery, the Special Master offered several options but State Farm resisted all except its choice of its sampling of 400 cases without any access to all data from which those 400 cases were selected. Even now, State Farm has offered no effective way for LaBrier to access the data that should have been shared in discovery long ago. Such an obstructionist approach cannot be rewarded. To the extent State Farm has been burdened by answering interrogatories rather than permitting direct access by LaBrier to the information she seeks, State Farm's intransigent approach has created much of that burden.

The Special Master did not abuse his discretion in concluding that the likely benefit of the discovery outweighs the burden or expense of compliance on State Farm.

### C. Is the discovery proportional?

State Farm also generally argues that the burden of the discovery is not proportional to the needs of the case.

In considering proportionality, the Special Master cited the factors under Rule 26(b):

"the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The issues at stake are at the very heart of this litigation. LaBrier does not have access to the information she seeks, other than through the discovery, as it is in State Farm's own database and the database of its vendor, Xactware. In terms of resources, LaBrier is an individual, while State Farm is a corporation with a national presence, with sophisticated access to data. As discussed in the preceding section, the burden or expense of the discovery outweighs its likely benefit, particularly in light of State Farm's refusal to permit an outsider to access its computer system or even provide complete lists of its data fields.

The Special Master acted well within the bounds of discretion, particularly in view of the centrality and importance of the information sought. It is difficult to imagine any fact discovery more necessary to the prosecution and defense of the case than that covered by the Order No. 4, as amended.

State Farm argues that the burden is disproportionate because of the individualized review it claims is necessary, and that the individualized review shows class certification cannot be granted in any event. As discussed above, State Farm failed to demonstrate the burden of producing the information is an undue one. Furthermore, State Farm cannot withhold for months the very information that LaBrier has sought for purposes of class certification and the merits, then claim LaBrier cannot meet her burden of proof and that State Farm therefore should not have to produce the missing data.

The Special Master did not abuse his discretion in concluding the burden of discovery is

- 12 -

Case 2:15-cv-04093-NKL   Document 176   Filed 05/09/16   Page 12 of 13

proportional to the needs of the case.

### III. Conclusion

State Farm's motion to vacate or suspend the Special Master's Discovery Order No. 4, as amended [Doc. 135], is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 9, 2016
Jefferson City, Missouri