UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| AMANDA M. LABRIER, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | No. 2:15-cv-04093-NKL |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Defendant State Farm Fire and Casualty Company moves to vacate Special Master Order No. 8. Doc. 194. In that order, Doc. 190, the Special Master denied State Farm's motion to find it had "substantially complied" with State Farm's obligation to answer Plaintiff's Second Set of Interrogatories. For the reasons discussed below, the Court concludes no abuse of discretion occurred and State Farm's motion to vacate Special Master Order No. 8 is denied.

**I.  Background**

Special Master Order No. 4 directed State Farm to answer Plaintiffs' Second Set of Interrogatories. Docs. 117 and 125. State Farm moved to vacate that order, Doc. 135, and the Court denied the motion, Doc.176 (Order dated 5/9/2016).

Plaintiffs' Second Set of Interrogatories consisted of four questions. The first two requested the claim number of structural damage claims upon which ACV payments had been made, the total amount of labor depreciation withheld, the date of the first withholding, and the dates of any subsequent withholdings. The third and fourth interrogatories involved State Farm's affirmative defenses, asking State Farm to identify the claim number, date of repayment of labor

depreciation, and amount repaid, and any applicable affirmative defenses and facts supporting a defense.[1] For its "Supplemental Responses," State Farm reproduced a spreadsheet it had

---

[1] Plaintiff's Second Set of Interrogatories specifically asked as follows:

**INTERROGATORY NO. 1:** Separately for each structural damage claim upon which you made one or more actual cash value ("ACV") payments to Missouri policyholders, and for which some amount of depreciation of labor was withheld from at least one of those ACV payments, please state the total, principal amount of labor depreciation that was actually withheld by you for each claim, subject to the applicable deductibles and policy limits. The criteria for this interrogatory are as follows:

    a. The temporal scope of this interrogatory includes claims for which the first ACV payment was between March 30, 2005 and the present and
    b. Excluded from this interrogatory is any structural damage claim that is or was subject to appraisal and
    c. Excluded from this interrogatory is any structural damage claim that is or was the subject of an individual lawsuit and
    d. By the terms of this interrogatory, excluded from this interrogatory is any claim for which State Farm paid its full limits of available coverage, without regard to the withholding of labor depreciation.

**INTERROGATORY NO. 2:** Separately state, for each structural damage claim within the scope of Interrogatory No. 1 (including its criteria) and for which you withheld labor depreciation of any amount from a Missouri policyholder, state the date that labor depreciation was first withheld. If multiple labor depreciation withholdings took place for a particular claim, state both the date(s) and amount(s) of the withheld labor depreciation.

**INTERROGATORY NO. 3:** Separately state, for each structural damage claim within the scope of Interrogatory No. 1 (including its criteria) and for which you withheld labor depreciation of any amount from a Missouri policyholder, whether you contend you subsequently paid a portion or all of the withheld labor depreciation for such claim, and, if so, set forth the date and amount of the withheld labor depreciation that was later paid. If you contend that payment of withheld labor depreciation took place on multiple dates for a particular claim, state both the date(s) and amount(s) of payment(s) of the withheld labor depreciation.

**INTERROGATORY NO. 4:** Separately state, for each structural damage claim within the scope of Interrogatory No. 1 (including its criteria) and for which you withheld labor depreciation of any amount from a Missouri policyholder, which

- 2 -

previously produced, to which it added a column disclosing what was on the memo line of checks sent to policyholders on the claims listed in the report. State Farm provided more information with respect to a sample of claims (398), for which it had its adjusters manually search for data and type it into spreadsheets. In its request to the Special Master, State Farm then summarized its position as follows:

> State Farm respectfully submits that it has substantially complied with Order No. 4. It has attempted full response to the Second Interrogatories in all respects where such compliance can be made by way of analyzing State Farm's available computer data, rather than by individualized review of each putative class member's claim. To the extent that such individualized review is needed, State Farm performed such a review for 398 claim files, and has shown that a like review for the remaining 149,600 or so putative class members cannot reasonably be required or accomplished in the time remaining before discovery closes in this action. Finally, much of the information State Farm needs for its affirmative defenses can only be obtained from records and information solely in the possession of putative class members themselves. State Farm will be seeking leave to issue discovery to the putative class, including a survey directed to a subset of putative class members, and will supplement its answers to the Second Interrogatories with any responsive information gathered. Pending that, State Farm requests a finding that it owes no further response to the Second Interrogatories at this time.

Doc. 210-215, pp. 5-6.

In rejecting State Farm's request for a finding of substantial compliance, the Special Master stated that State Farm's motion was "in many ways a rehash" of its previous objections to the interrogatories, and briefs and exhibits it filed with this Court in connection with its motion to modify Order No. 4:

> Basically, [State Farm] is arguing it cannot answer the interrogatories because the answers to them are not reflected in the electronic data available to it but must be located through a review

---

of your affirmative defenses apply to such claim and the facts supporting your affirmative defense(s) for such claim.

> of each putative class member's claim file. Although these claim files are stored in computerized form, [State Farm] maintains that the interrogatory answers in many cases cannot be determined without actually looking at the notes and correspondence, images of which are within the computerized claim file. [State Farm] claims that this review will take so much time, and result in so much expense, that it need not do more than it has already done in order to comply with its obligation to answer these interrogatories. [State Farm] claims that its supplemental response, which cross-referenced certain spreadsheets containing columnar data relative to 398 of the approximately 150,000 putative class of claims substantially complied with its requirement to fully answer the interrogatories.

Doc. 190, pp. 1-2.

The Special Master also discussed the data State Farm produced for the 150,000 claims and how it analyzed that data with respect to a sample of 398 of those claims for purposes of supplementing its responses to the first and second interrogatories. State Farm suggested its methodology "should have been expected to reliably identify those claims which involved a payment that was calculated by deducting depreciation (including labor-depreciation component of such depreciation). State Farm [then] sought to demonstrate that this test did not, in fact, reliably identify such claims." *Id.*, p. 2. But, the Special Master explained, State Farm did not use an original repair estimate and instead selected data that could have included the actual cost of repairs if such repairs had been made. Since the cost of actual repairs eventually made was not used by State Farm when it calculated a class member's ACV payment, the data gathered by State Farm would necessarily be corrupted.

While State Farm argued that the outcome of its methodology showed the burdensome nature of the task it was being forced to undertake in responding to the interrogatories, the Special Master concluded State Farm had not provided any direct answers to the first or second

interrogatories with respect to any claims, even the 398 sample claims that State Farm subjected to review by its adjustors.

As for the third and fourth interrogatories, State Farm argued it did not possess information with respect to a significant portion of such facts. The Special Master pointed out that State Farm's burden was to provide such information as was known to it or reasonably available to be provided, although a duty to supplement might arise when and if such information did become known or reasonably available to it. *Id.*, p. 5.

The Special Master also noted that the interrogatory answers were not properly verified on behalf of the corporate entity. The affiants stated that their verifications were not based entirely on their personal knowledge and that such information was provided only to the best of their knowledge, information and belief. But, the Special Master noted, Fed. R. Civ. P. 33(a) expressly permits a corporate party to verify its answers without personal knowledge of every response by furnishing such information as is available to the party. *Id.*, p. 5. The corporation may accomplish this through whatever internal process the corporate representative has chosen. *Id.* (citing *Shepherd v. American Broadcasting Companies, Inc.,* 62 F.3d 14369, 1482 (D.C. Cir. 1995)).

The Special Master denied State Farm's motion for a finding of substantial compliance, and ordered it to provide a detailed written plan of how it intended to proceed to fully answer the interrogatories, and that the interrogatories must be answered within 90 of the filing of the plan, with sworn partial answers provided every two weeks. The Special Master did not order State Farm to provide the answers in the exact format requested by Plaintiff, but noted that the "basic information" requested did not require State Farm to provide numerous columns of data and that a "rather simple format" should suffice. Doc. 190, p. 6.

## II. Discussion

### A. Standard of review

Because the Order appointing the Special Master in this case was silent as to the standard of review, his discovery orders are reviewed by this Court for abuse of discretion. *See* Fed. R. Civ. P. 3(f)(5) (a "court may set aside a master's ruling on a procedural matter only for an abuse of discretion" unless the order of appointment "establishes a different standard"); and, *see, e.g., In re. Hardieplank Fiber Cement Siding Litig.,* 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (special master's discovery orders are procedural and subject to review for abuse of discretion).

State Farm argues the standard is *de novo*, because the Special Master's conclusions in Order No. 8 "regarding relevance, substantial compliance, and proportionality—all of which are challenged herein in this Objection—are legal conclusions." Doc. 210, pp. 13-14 of 20. The Special Master did not make legal conclusions in Order No. 8. State Farm asked the Special Master to enter a finding that it had substantially complied with Order No. 4, a prior discovery order that was upheld by the Court. To the extent the Special Master addressed relevance or proportionality, it was in the context of reiterating Order No. 4, and the Court's Order upholding it which the Special Master of course did not have authority to contravene. The Special Master's Order No. 8 addressed State Farm's responsiveness to the Second Set of Interrogatories, to-date. Such matter is a procedural matter, not a legal conclusion, and accordingly, the order is reviewed for abuse of discretion.

### B. The Special Master did not abuse his discretion

State Farm argues that it cannot be faulted for answering the way it did because it was tracking an approach the Special Master previously endorsed, and that the Special Master's

- 6 -

criticism of its selection of categories of information is unclear. These arguments are unpersuasive.

State Farm says that part of the reason for its approach is that it was "track[ing] the Special Master's own suggestions regarding a means for at least partially answering the Second Interrogatories through computer queries." Doc. 210, p. 14 of 20. State Farm cites Special Master Order No. 4, Doc. 117, pp. 2-3. In that order, the Special Master rejected State Farm's argument that the only way to obtain the relevant, requested information was to perform a file-by-file analysis. By way of example to explain that conclusion, the Special Master highlighted categories of computerized information that were identified in State Farm's own briefing as being available to it, including incremental amounts paid on a claim; total amounts paid on a claim; the amount of the relevant deductible; the amount of relevant policy limits; the amount of the calculated actual cash value; and the amount of labor depreciation deducted in the course of calculating ACV. *Id.,* p. 3. The Special Master stated, "It appears … that the withheld labor deprecation amounts called for in the Interrogatories could be determined from [State Farm's] own computerized records, at least with respect to a certain subset of" the universe of claims. *Id.*[2] The Special Master did not, in Order No. 4, identify a specific methodology that might apply to a subset of claims or all claims, let alone any methodology State Farm must use with respect to a subset of claims or all claims.

Furthermore, the methodology State Farm *did* use in preparing its supplemental responses

---

[2] The Special Master concluded that even if that rationale was incorrect, State Farm should be required to answer the interrogatories for additional reasons. State Farm was being ordered to answer interrogatories in lieu of producing documents, which State Farm had described as a substantial burden. To the extent State Farm's computerized data was not readily accessible, it is because of State Farm's purported inability to access the data, notwithstanding that State Farm itself uses the same categories of information pertinent to the calculation of amounts owed its insureds. "At the very least, [State Farm's] failure to keep such records should not constitute justification to withhold relevant discovery from [LaBrier]." Doc. 117, p. 4.

- 7 -

incorporated actual-cost-of-repair data, which is not what was asked for in the first and second interrogatories. While State Farm's methodology is consistent with its theory of the case, this methodology was not reasonably calculated to produce data responsive to the interrogatory that State Farm was ordered to answer. That interrogatory asked for the total amount of labor depreciation *actually* withheld by State Farm from any ACV payments, for each structural damage claim upon which State Farm made an ACV payment and some labor depreciation was withheld from the ACV payment. It did not ask what amount of depreciation would have been deducted if State Farm had used an actual repair cost rather than an estimated repair cost.

In addition, State Farm acknowledged in its motion to vacate that the ACV estimate it uploaded was only "the last uploaded estimate for the claim[.]" Doc. 210, p. 11. But State Farm explains on the next page of its motion that part of the task its adjusters performed in reviewing the 398 claim samples was to go back into the claim file and record the "originally applied labor depreciation for the first payment on a claim[.]" *Id.,* pp. 11-12 of 20, and n.10.[3] The record supports the Special Master's conclusion that State Farm did not substantially answer the interrogatories.

Furthermore, State Farm was not and has not been permitted to provide discovery with respect to only a sample of the class claims. Therefore, its continued insistence that this is a satisfactory way to substantially answer the interrogatories is obviously incorrect.

Nor does it appear State Farm answered the third and fourth interrogatories with respect to any class members. As the Special Master pointed out, it was State Farm's burden to provide

---

[3] In oral argument before the Special Master, State Farm disclosed that Xactware wrote programming "to get the labor depreciation out…for all 150,000 claims already for the last uploaded estimate." State Farm does not appear to have requested programming for all estimates, explaining to the Special Master that Xactware would "have to go back to them to try to do calculations for iterative estimates, like interim ones[.]" Doc. 210-28, p. 19 of 39 (Tr. p. 65).

such information as was known to it or reasonably available to it, although a duty to supplement might arise when and if such information did become known or reasonably available to it. There is no evidence that State Farm complied with that directive.

The Special Master did not abuse his discretion in concluding State Farm had failed to substantially comply with its obligation to answer the Second Set of Interrogatories.

State Farm also argues that Special Master Order No. 8 should be vacated because the third interrogatory rests on a faulty premise. That interrogatory asks, with respect to claims identified in Interrogatory No. 1 and for which State Farm withheld labor depreciation, "whether [State Farm] contend[s it]subsequently paid a portion or all of the withheld labor depreciation for such claim, and, if so, set forth the date and amount of the withheld labor depreciation that was later paid. If [State Farm] contend[s] that payment of withheld labor depreciation took place on multiple dates for a particular claim, state both the date(s) and amount(s) of payment(s) of the withheld labor depreciation." State Farm argues that the policy caps its payment obligation by an insured's actual cost of repair, so full replacement cost is all that is owed, regardless of whether an initial ACV payment was correctly calculated, and a class member who has received full replacement payment cannot establish a breach of contract or contractual damages. Doc. 210, p. 15. Thus, State Farm argues, Plaintiff's "demand that State Farm identify the amounts of labor depreciation 'repaid' in subsequent replacement cost payments, or labor depreciation supposedly still 'owed' after an insured's full cost to repair has been paid, … is based on an artificial construct and asks state Farm to create theoretical and irrelevant information." *Id.*

Special Master Order No. 8 did not change the third interrogatory which was previously approved by the Special Master and the Court. A reasonable litigant at this stage of the dispute

- 9 -

Case 2:15-cv-04093-NKL   Document 266   Filed 08/09/16   Page 9 of 12

would understand what this interrogatory asks for and why it is being asked. Indeed, this information is needed to address State Farm's argument that it owes no more than the full cost to repair or replace the damaged property. The information requested is neither theoretical nor irrelevant. More importantly, as discussed below, any dispute about the meaning of Interrogatory 3 could have been raised in State Farm's motion to vacate Special Master Order No. 4. To the extent it was not raised there, it is too late to seek reconsideration here.

State Farm also argues at length that the discovery is burdensome and not proportional. The Court has previously addressed and rejected the same argument in connection with State Farm's motion to vacate Special Master Order No. 4. Again, this argument is a request to reconsider the Court's prior ruling. A request to reconsider an interlocutory order requires the movant to demonstrate it "did not have a fair opportunity to argue the matter previously" and that "granting [the requested relief] is necessary to correct a significant error." *Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco and Specialty Co., Inc.*, 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010) (and citations therein). *See also Tussey v. ABB, Inc.*, 2012 WL 5512389, at *1 (W.D. Mo. Nov. 14, 2012). A motion for reconsideration "is not a vehicle for simple reargument on the merits[.]" *Tussey*, 2012 WL 5512389, at *1 (quoting *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999)). State Farm cannot meet this standard.

Much of the material to which State Farm points duplicates material on which it previously relied in objecting to Plaintiff's Second Set of Interrogatories and seeking to vacate Special Master Order No. 8. To the extent State Farm supplies new material, nothing suggests State Farm could not have produced it earlier. State Farm had a fair opportunity to make this argument earlier.

More fundamentally, however, State Farm cannot demonstrate a significant error that

- 10 -

justifies reconsideration.  State Farm conceded that information about labor depreciation is available to it in ECS or Xactimate, it simply argues that the process of gathering it is so burdensome that it should not be required to answer the interrogatories.  Doc. 210-28, p. 18 of 39 (Tr. of Proceedings of 5/16/2016, p. 61).  This is an argument the Court previously considered and rejected.  Further, and as discussed above, most recently State Farm has approached the discovery in a way that appears to have been inefficient, both by including irrelevant data in a data query, and excluding information that appears relevant, then tasking adjusters to manually enter data from existing databases into a new one and go back through the results, showing that the results were difficult to work with.[4]  State Farm even identified, to the Special Master, programming that captures data that appears relevant.  LaBrier also argued before the Special Master that data that appears to be available to State Farm, and that could streamline answering the interrogatories, has never been provided, such as claim notes; payee on the check (if the payee is not the policyholder, the payment is unlikely to be an ACV payment); number of estimates; dates of estimates; and net ACV payment.  Doc. 210, p. 32 of 39 (Tr. of Proceedings, pp. 117-18).  The Special Master told the parties that State Farm's "methodology in providing its answers is its own business[,]" Doc. 215-2, p. 24 (teleconference of 6/13/2016).  But State Farm's choice to use a methodology that does not produce the information that a person in good faith would understand was being requested, does not demonstrate that the Court should reconsider its prior order, let alone that the Special Master abused his discretion in denying State Farm's request for a finding of substantial compliance.

Lastly, State Farm argues that 90 days after submission of a plan for substantial compliance is not sufficient time in which to provide the discovery answers.  The Court cannot

---

[4] Plaintiff points to an example in which an adjuster spent 240 minutes working on a claim involving a single ACV payment.  Doc. 209-2.

conclude, based on the record before it and as discussed above, that the Special Master abused his discretion in setting that deadline.

## III. Conclusion

State Farm's motion to vacate Special Master Order No. 8, Doc. 194, is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 9, 2016
Jefferson City, Missouri